[Cite as *Smith v. S.P. Greenville Inn, L.L.C.*, 2014-Ohio-4311.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| GEMMA CASADESUS SMITH, ADMINISTRATRIX OF THE ESTATE OF MARK A. SMITH, DECEASED, | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant, | : | **CASE NO. 2014-G-3184** |
| | : | |
| - vs - | : | |
| S.P. GREENVILLE INN, L.L.C., d.b.a. GREENVILLE INN, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 12 P 000442.

Judgment: Affirmed.

*Frank Gallucci, III* and *Michael D. Shroge*, Plevin & Gallucci Co., L.P.A., 55 Public Square, Suite 2222, Cleveland, OH 44113; *Paul W. Flowers*, Paul W. Flowers Co., L.P.A., Terminal Tower, 35th Floor, 50 Public Square, Cleveland, OH 44113-2216 (For Plaintiff-Appellant).

*Gregory A. Beck* and *Mel L. Lute, Jr.*, Baker, Dublikar, Beck, Wiley & Mathews, 400 South Main Street, North Canton, OH 44720 (For Defendant-Appellee S.P. Greenville Inn, L.L.C., d.b.a. Greenville Inn).

*Thomas H. Cabral* and *Markus E. Apelis*, Gallagher, Sharp, Fulton & Norman, Sixth Floor, Bulkley Building, 1501 Euclid Avenue, Cleveland, OH 44115 (For Defendants-Appellees Fraternal Order of Eagles, Aerie #2436; and Grand Aerie of the Fraternal Order of Eagles).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Gemma Casadesus Smith, in her capacity as Administratrix of the Estate of Mark A. Smith, deceased, appeals from the trial court's entry of summary judgment in favor of appellees. Based on the following, we affirm.

**{¶2}** Appellant filed a wrongful death/survivorship action against appellees, SP Greenville Inn, L.L.C., d.b.a. Greenville Inn ("Greenville Inn"); the Grand Aerie of the Fraternal Order of Eagles ("the Grand Aerie"); and the Fraternal Order of Eagles, Aerie No. 2436 ("the Local Aerie"). The complaint also named as defendants Mark A. Schneider, in his capacity as the Administrator of the Estate of Daniel V. Neesham, deceased, and Marilyn Neesham.[1] The complaint alleged that in the early morning of December 19, 2010, Mark A. Smith, who was walking home from the Greenville Inn in Bainbridge Township, was struck and killed by an automobile that was being operated by Daniel V. Neesham. Mr. Neesham fled the scene of the accident and was later found dead due to an "overdose of alcohol and an assortment of controlled substances." Mr. Smith was a medical professor at Case Western Reserve University and is survived by his wife, Ms. Smith, and their two minor sons.

**{¶3}** The complaint alleges that Mr. Neesham consumed alcoholic beverages at the Local Aerie before heading to the Greenville Inn to consume more alcoholic beverages; the complaint alleges that Mr. Neesham was intoxicated while at the Local Aerie, the Greenville Inn, and while driving home from the tavern. The complaint further alleged the establishments could have prevented Mr. Neesham from driving home that evening.

**{¶4}** Appellant alleged two claims for relief against the Local Aerie and the Greenville Inn: a statutory violation of Ohio's Dram Shop Act and common law negligence.

---

1. Plaintiff has since settled the claims with Mr. Schneider and Mrs. Neesham. After the Grand Aerie filed a motion for summary judgment, plaintiff voluntarily dismissed the Grand Aerie as a party to the lawsuit. Consequently, only the claims against Greenville Inn and the Local Aerie remain.

{¶5} Discovery ensued. The discovery involved taking over 13 depositions of various patrons, employees, and agents of the establishments.

{¶6} Both the Local Aerie and the Greenville Inn filed motions for summary judgment. Appellant filed a consolidated memorandum in opposition to the motions for summary judgment. The trial court entered judgment in favor of the Local Aerie and the Greenville Inn on both claims.

{¶7} Appellant filed a timely notice of appeal and, as her first assignment of error, asserts the following:

{¶8} "The trial judge erred, as a matter of law, by granting summary judgment upon the claim for Dram Shop Liability that plaintiff-appellant had alleged and substantiated pursuant to R.C. 4399.18."

**OHIO'S DRAM SHOP ACT**

{¶9} Ohio's Dram Shop Act, as codified in R.C. 4399.18, states:

> * * * A person has a cause of action against a permit holder or an employee of a permit holder for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence: (A) The permit holder or an employee of the permit holder knowingly sold an intoxicating beverage to * * * (1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code * * * [and] (B) The person's intoxication proximately caused the personal injury, death, or property damage.

{¶10} According to R.C. 4301.22(B), "[n]o permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person."

{¶11} The Ohio Supreme Court has found that "actual knowledge of intoxication is a necessary component in fashioning a justiciable claim for relief under R.C.

3

4301.22(B).  *Constructive knowledge will not suffice.*  It has been observed that to hold otherwise would subject vendors of intoxicating beverages to ruinous liability every time they serve an alcoholic beverage."  (Emphasis added and internal citations omitted.) *Gressman v. McClain*, 40 Ohio St.3d 359, 363 (1988).

{¶12}  The *Gressman* Court further stated:

> Knowledge of a patron's intoxication may be obtained from many sources and in many ways, and is furnished or obtained by a variety of facts and circumstances. Generally speaking, a person has knowledge of an existing condition when his relation to it, his association with it, his control over it, or his direction of it are such as to give him actual personal information concerning it.

*Id.*  In *Lesnau v. Andate Ent., Inc.*, 93 Ohio St.3d 467 (2001) the Ohio Supreme Court discussed its holding in *Gressman*, *supra*.  The Court stated:

> [W]e rejected the lesser standard [one requiring that the golf course employees *knew or should have known* that the patron was intoxicated], holding that *actual knowledge* was required.  The court reasoned that a liquor permit holder has a statutory duty under R.C. 4301.22(B) to observe and know when a patron is intoxicated.  The court reasoned that the commercial proprietor, in the business of selling intoxicating beverages, is in a position to know and recognize when its customers are intoxicated.  [*Gressman* at 363.] However, because the state of intoxication is a subjective determination, the court required actual knowledge of a patron's intoxication in order to impose liability on the commercial proprietor. The *Gressman* court found that the enactment of R.C. 4399.18 in 1986 codified the previous holdings of the court; the court found no persuasive reason to alter that codification of public policy.  *Id.* [Emphasis sic.]

## SUMMARY JUDGMENT

{¶13}  Pursuant to Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated;
> (2) The moving party is entitled to judgment as a matter of law; and
> (3) It appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

4

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶14} To prevail on a motion for summary judgment, the moving party has the initial burden to affirmatively demonstrate that there is no genuine issue of material fact to be resolved in the case, relying on evidence in the record. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Pursuant to Civ.R. 56(C), the evidence to be considered is limited to the "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action * * *." If this initial burden is met, the nonmoving party then bears the reciprocal burden to set forth specific facts which prove there remains a genuine issue to be litigated, pursuant to Civ.R. 56(E). *Dresher, supra*, at 293.

{¶15} An appellate court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, the court of appeals applies the same standard as the trial court, viewing the facts in the case in a light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶16} To support its motion for summary judgment, the Local Aerie identified the depositions of the on-duty bartender and several patrons of the bar that evening who had encounters with Mr. Neesham. The Greenville Inn, in its motion for summary judgment, provided the depositions of its owner, the bartenders working that evening, and a patron of the establishment. Both motions were accompanied by reports from retained experts—the Local Aerie attached the reports of Dr. Marland Dulaney, a toxicologist, and C. Brian Tanner, P.E., an accident reconstructionist; Greenville Inn also attached the report of C. Brian Tanner, P.E.

5

{¶17} Appellees provided sufficient evidentiary material to establish non-liability, including evidence that Mr. Neesham was not served an intoxicating beverage at a time when he was noticeably intoxicated. The burden thus shifted to appellant to demonstrate a genuine issue of material fact. To support a cause of action against either the Local Aerie or the Greenville Inn, appellant was required to provide evidence from which a reasonable trier of fact could conclude that the establishments knowingly sold an intoxicating beverage to Mr. Neesham while he was noticeably intoxicated. Therefore, in order to rebut appellees' motions for summary judgment, appellant must have set forth evidentiary material alleging specific facts to establish a genuine issue of material fact; appellant must offer evidence which illustrates that an employee witnessed or had actual knowledge that Mr. Neesham was noticeably intoxicated at the time an intoxicating beverage was served to him.

## THE LOCAL AERIE

{¶18} In the memorandum in opposition to appellees' motion for summary judgment, appellant relied heavily on the depositions of Neil Wolfe, a patron that evening at the Local Aerie, and Jennifer Jacobson, a patron that afternoon at the Local Aerie. Ms. Jacobson testified that when she attended the children's Christmas party that afternoon at the Local Aerie, she observed Mr. Neesham having a drink at the bar. Ms. Jacobson arrived at approximately 12:30 p.m. and left at approximately 4:30 p.m. Ms. Jacobson noted that Mr. Neesham typically volunteered at the functions: "he was always up there helping with whatever needed to be done." Other than noting that Mr. Neesham had consumed an alcoholic beverage, Ms. Jacobson did not comment in her deposition on the actions of Mr. Neesham or whether he appeared intoxicated.

6

**{¶19}** Mr. Wolfe testified that he had a brief encounter with Mr. Neesham at approximately 10:30 p.m. Mr. Wolfe was speaking to a friend of Mr. Neesham. Mr. Neesham then came over to the bar area and said "hello" to Mr. Wolfe. Mr. Wolfe testified that Mr. Neesham appeared inebriated during this brief encounter, yet he was unable to remember whether Mr. Neesham had any difficulty speaking or slurring of his words. While Mr. Wolfe did note that Mr. Neesham tripped, he stated that he specifically tripped over the leg of the bar stool, not just "over his own feet." Notably, Mr. Wolfe testified that he did not observe any bartender at the Local Aerie serve Mr. Neesham an alcoholic beverage. Mr. Wolfe further testified that he did not have any knowledge of what condition Mr. Neesham was in when he was served alcohol at the Local Aerie. He testified as follows:

> Q: Have you ever been sitting with [Mr. Neesham] at the bar when he was served by a bartender at the Eagles appearing highly intoxicated or inebriated?
>
> A: I never saw him.
>
> Q: So my question is you never viewed, even prior to December 18th, you never viewed a waitress or a bartender serve him when he appeared highly intoxicated or inebriated?
>
> A: That is correct. I can count our interactions on one hand.

After their brief encounter, Mr. Wolfe indicated that he did not see Mr. Neesham again.

**{¶20}** At oral argument, appellant contended that the record suggests the Local Aerie served Mr. Neesham an alcoholic drink after his "tripping incident." To support its motion for summary judgment, the Local Aerie filed the report of Dr. Marland Dulaney, Jr., a board-certified toxicologist. Dr. Dulaney's report contained a chart of Mr. Neesham's drinking activity at the Local Aerie as recorded by video surveillance from 5:41 p.m. to 12:40 a.m., when Mr. Neesham exited the Local Aerie. This chart indicates

7

that Mr. Neesham did, in fact, consume one alcoholic drink after Mr. Wolfe witnessed him trip over the leg of the bar stool; Mr. Neesham consumed this alcoholic drink at 12:00 a.m. The chart also indicates that after the bar-stool incident, Mr. Neesham consumed two non-alcoholic drinks at 11:10 p.m. and 11:35 p.m. Notably, however, there is no evidence in the record that Mr. Neesham appeared impaired from 10:30 p.m., after the "tripping" incident, to 12:00 a.m., the time he was served an alcoholic beverage. In fact, Lt. Todd Kinley, an off-duty University Heights Police Officer, testified that he saw Mr. Neesham upon his arrival at the Greenville Inn and Mr. Neesham did not appear to be intoxicated at that time.

{¶21} Megan Gregorek, the bartender at the Local Aerie, was also deposed. Ms. Gregorek testified that she was trained to look for signs of intoxication; the bartenders had taken a state-sponsored course in which local law enforcement and state liquor control agents provided training with regard to proper alcohol service. She was the bartender that evening, arriving at approximately 6:30 p.m. Ms. Gregorek observed Mr. Neesham at approximately 9:00 p.m.; Mr. Neesham did not appear intoxicated. Ms. Gregorek testified that she poured Mr. Neesham three alcoholic drinks and three non-alcoholic drinks. Ms. Gregorek noted that she last served Mr. Neesham at approximately 11:45 p.m. Again, Ms. Gregorek stated that Mr. Neesham was not intoxicated.

{¶22} Other members of the Local Aerie, all of whom spent time with Mr. Neesham that night, were also deposed, including Stephanie Fuerst, Dawn Collins, and Michele Erney. Each testified that Mr. Neesham did not appear intoxicated—he was not slurring his speech, was not stumbling, and appeared normal.

{¶23} While it is possible to use circumstantial evidence to demonstrate actual knowledge, the circumstantial evidence here does not demonstrate that a bartender at the Local Aerie observed Mr. Neesham to be noticeably intoxicated at the time he was served alcoholic beverages. In fact, the only evidence offered by appellant that Mr. Neesham was intoxicated at the Local Aerie was the testimony of Mr. Wolfe, who testified that his tripping on the bar stool leg was the only reason he believed Mr. Neesham to be intoxicated. Mr. Wolfe neither personally observed Mr. Neesham after this incident nor witnessed any service of an intoxicating beverage to Mr. Neesham after this incident.

{¶24} After reviewing the record and construing all facts in a light most favorable to appellant, we find summary judgment was appropriate because there are no genuine issues of material fact to be litigated regarding whether the Local Aerie knowingly served a noticeably intoxicated Mr. Neesham or had actual knowledge that Mr. Neesham was intoxicated at the time he was served intoxicating beverages.

**THE GREENVILLE INN**

{¶25} On appeal, appellant advances the following theories as to why the trial court erred in granting the Greenville Inn's motion for summary judgment. Appellant states, inter alia: (1) there were no written policies for the service of alcohol at the Greenville Inn; (2) the bartender at the Greenville Inn never asked Mr. Neesham if he had been drinking earlier in the evening: (3) the bartender at the Greenville Inn never refused Mr. Neesham a drink; (4) other patrons in the bar were intoxicated but were not refused service; and (5) because bartenders serve alcoholic drinks over the counter, they are afforded "numerous opportunities" to observe patrons known to be heavy drinkers. Appellant takes exception with the depositions of the bartenders who were

9

working that evening: "The assertions that not one of Defendants' managers, bartenders, or waitresses noticed any of [Mr. Neesham's 'telltale signs of extreme intoxication'], is simply incredulous, and need not be accepted by the trier of fact." Appellant also attacks the credibility of the bartender at the Greenville Inn: "[T]he loyal Greenville Inn bartender claimed that he never saw the customer that particular evening."

{¶26} As previously stated, however, under Ohio's Dram Shop Act, appellant was required to show service of alcohol after actual knowledge of intoxication. "The Ohio Supreme Court has specifically stated that constructive knowledge (i.e., arguments of what someone should have known), whether it is based on direct or circumstantial evidence, *will not suffice* to demonstrate a claim under Ohio's Dram Shop Act. See *Gressman*[, *supra*]." *Caplinger v. Korrzan Restaurant Mgt., Inc.*, 12th Dist. Butler No. CA2011-06-099, 2011-Ohio-6020, ¶19 (emphasis sic.).

{¶27} James Kinkaid, a bartender at the Greenville Inn for over 17 years, testified that he served only one vodka and soda to Mr. Neesham; Mr. Neesham did not appear intoxicated when he served him the drink. Scott Harris, the other bartender at the Greenville Inn that evening, testified that he did not remember seeing Mr. Neesham that night. Both bartenders maintain a current certification from an alcohol safety training program.

{¶28} In the memorandum in opposition to appellees' motions for summary judgment, appellant relies upon the deposition of Lt. Kinley. Lt. Kinley, who was off duty at the time, testified that when he first encountered Mr. Neesham, he did not appear intoxicated. While there is a dispute as to the exact time Mr. Neesham arrived at the Greenville Inn, there is testimony that he did not appear intoxicated upon his arrival.

10

There is no testimony that he was noticeably intoxicated upon his arrival. Lt. Kinley, however, did testify that when he observed Mr. Neesham at approximately 1:30 a.m., he appeared "impaired." Appellant argues that Lt. Kinley observed Mr. Neesham "laughing and carrying on pretty loudly and stumbling." In regard to Mr. Neesham's stumbling, Lt. Kinley stated the following:

{¶29} "But I don't know if [his stumbling] was a result of him being impaired or if he had stumbled while walking or for some other reason. I have no clue. Also understand, it's my opinion that I myself was intoxicated that evening. So my judgment may not have been as spot on as it would be had I been not drinking."

{¶30} Lt. Kinley offered Mr. Neesham a ride home, but Mr. Neesham refused. Lt. Kinley stated that because he is a police officer, he makes it a habit to tell the manager of an establishment that a patron appears intoxicated. He stated, "I will notify the manager or staff: 'I think that guy's done.'" However, Lt. Kinley did not notify anyone at the Greenville Inn regarding his belief that Mr. Neesham was intoxicated.

{¶31} In his deposition, Lt. Kinley could not recall whether he witnessed Mr. Neesham drinking at the Greenville Inn. Lt. Kinley did not know whether Mr. Neesham was served any alcohol at the time or after he witnessed him the second time, at approximately 1:30 a.m. Even when accepting Lt. Kinley's testimony as true, i.e., that Mr. Neesham exhibited behaviors indicative of intoxication, there is no other evidence in the record that establishes the bartenders were aware or knew of this behavior or that Mr. Neesham was served an alcoholic beverage after displaying signs of intoxication. Lt. Kinley observed Mr. Neesham at approximately 1:30 a.m., and there is no evidence to indicate that Mr. Neesham was drinking an alcoholic beverage, was served an alcoholic beverage after this time, or displayed signs of intoxication at the time when he

11

was last served an intoxicating beverage. *See Caplinger*, *supra*, at ¶24 (emphasis sic.) ("Accepting as true that Caplinger was slurring his speech and acting in a hyper mood, the only fact that could be established by Nelson's testimony is specific to the time of the phone call, right before Caplinger left the bar. As indicated above, however, a person must be noticeably intoxicated *at the time of service*—not at the time he leaves the bar—for purposes of the Dram Shop Act.").

{¶32} Thus, Lt. Kinley's deposition does not establish a genuine issue of material fact as to whether the Greenville Inn had actual knowledge that Mr. Neesham was intoxicated yet served him an intoxicating beverage, but it offers speculation that Mr. Neesham appeared intoxicated at the end of the evening. Lt. Kinley's testimony failed to establish that employees of the Greenville Inn knowingly sold an intoxicating beverage to Mr. Neesham while he displayed signs of intoxication.

{¶33} Appellant also points to the affidavit of Massoud S. Tavakoli, Ph.D., P.E., who is a professional engineer and accident reconstructionist. Dr. Tavakoli opined that Mr. Neesham was driving over the speed limit: "Were Mr. Neesham driving at the posted speed limit, he would have been able to perceive and react to the presence of the pedestrian in a way to either avoid or substantially reduce the severity of the impending impact with the decedent." This evidence, however, does not create a genuine issue of material fact with regard to liability. Appellant, under Ohio's Dram Shop Act, was required to show that an intoxicating beverage was knowingly sold to a noticeably intoxicated person.

{¶34} After reviewing the record and construing all facts in a light most favorable to appellant, we find summary judgment for the Greenville Inn was appropriate because there are no genuine issues of material fact to be litigated regarding whether the

Greenville Inn knowingly served a noticeably intoxicated Mr. Neesham or had actual knowledge that Mr. Neesham was intoxicated at the time he was served intoxicating beverages.

**{¶35}** Appellant's first assignment of error is without error.

**COMMON LAW NEGLIGENCE**

**{¶36}** Appellant's second assignment of error states:

**{¶37}** "The trial judge erred, as a matter of law, by granting summary judgment upon the common law negligence claims that plaintiff-appellant had raised and established."

**{¶38}** Under her second assignment of error, appellant argues the trial court erred in its determination that "defendants owed no common law duty to Mr. Smith with respect to the off premises accident." In its entry granting the motions for summary judgment filed by the Local Aerie and the Greenville Inn, the trial court stated: "Plaintiff cannot pursue Defendants on an ordinary negligence theory in the context of this case. The Dram Shop Act provides the exclusive remedy for a Plaintiff to pursue alcohol permit holders for injury proximately caused by the negligent acts of intoxicated persons."

**{¶39}** This court, in *Studer v. Veterans of Foreign Wars Post 3767*, 185 Ohio App.3d 691, 2009-Ohio-7002, ¶40-41 (11th Dist.), has recognized:

> '[T]he Ohio Dram Shop Act, R.C. 4399.18, embodies (the) general, common-law rule that a person * * * may not maintain a cause of action against a liquor permit holder for injury resulting from the acts of an intoxicated person. The statute creates a narrow exception, however, to the basic premise of non-liability by providing that "a person" has a cause of action against a permit holder * * * for off-premises injury caused by an "intoxicated person" "only when" certain criteria are met. R.C. 4399.18.' (Emphasis deleted.) *Klever v. Canton Sachsenheim, Inc.*, 86 Ohio St.3d 419, 421 [1999].

Further, '[s]ince the enactment of R.C. 4399.18 in 1986, it has been consistently held that the General Assembly clearly intended that 4399.18 provided the exclusive remedy against liquor permit holders * * * for the negligent acts of intoxicated patrons * * *.' *Cummins v. Rubio*, [87 Ohio App.3d 516, 521 (2d Dist.1993)].

{¶40} In her brief, appellant concedes that Ohio's Dram Shop Act is "undoubtedly the exclusive means available for imposing liability for supplying alcohol in violation of statutory duties, that is the extent of the General Assembly's revision of the common law." However, appellant maintains that liquor permit holders remain legally accountable for the damages they cause as a result of negligence that is "unrelated to the service of beer, wine, and liquor." Here, appellant argues, the employees of the Local Aerie or the Greenville Inn could have prevented Mr. Neesham from driving his vehicle by: (1) convincing him to turn over his keys; (2) dissuading him from entering his vehicle; or (3) calling the police.

{¶41} In an attempt to avoid Ohio's Dram Shop Act, appellant cites *Prince v. Buckeye Union Ins. Co.*, 5th Dist. Richland No. 92-CA-6, 1992 Ohio App. LEXIS 6155, and *Auto-Owners Ins. Co. v. JC KC, Inc.*, 9th Dist. Summit No. 18937, 1998 Ohio App. LEXIS 5268, for support that causes of action independent and separate from the sale or service of alcohol fall outside the scope of liquor liability exclusions.

{¶42} Appellant's reliance on *Prince* and *Auto-Owners*, however, is misplaced. Both *Prince* and *Auto-Owners* involved actions by insurance companies to determine whether an exclusion clause could be utilized to deny the insured legal representation. *Prince* at *3; *Auto-Owners* at *10. Further, both cases are factually distinguishable, as the establishments in *Prince* and *Auto-Owners* took affirmative actions that enabled visibly intoxicated individuals to engage in behavior where harm to either the intoxicated individual or a third-party was foreseeable. For example, in *Prince*, a third-party was

14

injured while riding as a passenger in the car of Gibson, who had been served alcohol by a liquor permit holder, Night Moves Café. *Prince* at *2. Gibson's car keys had been confiscated by an employee of Night Moves Café, but were later returned to him; none of the Night Moves Café employees took any additional steps to prevent Gibson from driving. *Id.*

{¶43} In *Auto-Owners*, an employee of the establishment actively placed an intoxicated individual into a vehicle known to be driven by another intoxicated individual. *Auto-Owners* at *2. The court determined that coverage for such an act is not barred by the liquor liability exclusions of the insurance policy. *Id.* at *16-17. The court in *Auto-Owners* reasoned, "[w]hile a bar and its employees may not be able to exercise a great deal of control over intoxicated patrons, the bar and its employees do have control over their own actions in entrusting keys to an intoxicated person or placing an intoxicated person in the back seat of a vehicle to be driven by another intoxicated person." *Id.* at *17.

{¶44} Here, the present case does not involve a factual scenario similar to *Prince* or *Auto-Owners*. Further, we recognize the precedent from this court, as well as the Courts of Appeal of the First, Second, Third, Fourth, and Sixth Districts, holding that any recovery against a liquor permit holder for injuries caused by an intoxicated patron must be via a claim under R.C. 4399.18. *See Stillwell v. Johnson*, 76 Ohio App.3d 684 (1st Dist.1991) *Aubin v. Metzger*, 3d Dist. Allen No. 1-03-08, 2003-Ohio-5130, ¶16 ("R.C. 4399.18 does not exclude all actions against liquor permit holders. This section only limits the recovery of those who suffer a loss caused, 'as a result of the actions of an intoxicated person.'"); *Litteral v. The Ole Menagerie* (Sept. 4, 1996), 4th Dist. Lawrence No. 95CA33, 1996 Ohio App. LEXIS 3870 (May 4, 1993); *Cummins v. Rubio*

87 Ohio App.3d 516 (2d Dist.1993); *Brown v. Hyatt-Allen Am. Post No. 538* 6th Dist. Lucas No. L-89-336, 1990 Ohio App. LEXIS 4886 (Nov. 9, 1990).

{¶45} There is no evidentiary material that any employee of either establishment was faced with a scenario where they should have, but failed to, take steps to prevent Mr. Neesham from driving.  Consequently, we find the trial court did not err in granting the motions for summary judgment of the Local Aerie and the Greenville Inn with respect to appellant's common law negligence claim.

{¶46} The judgment of the Geauga County Court of Common Pleas is hereby affirmed.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.

16