OPINION
{¶ 1} Plaintiff-appellant Alvernia Barnes appeals the Columbiana County Common Pleas Court's grant of summary judgment for defendants-appellees WDVE and Capstar Broadcasting Partners, Inc. (referred to as WDVE) and defendantsappellees ALSAN Corporation and East Liverpool Motor Lodge (referred to as ELML). Defendant Daniel Hallam went to a WDVE show at ELML, which held an alcohol vendor's license. After consuming alcohol, he left ELML and caused an automobile accident with Barnes. She was seriously injured in the accident. The issues presented in this appeal are: (1) when viewed in the light most favorable to Barnes, was there evidence presented that ELML served Hallam alcohol when he was visibly intoxicated, and (2) does there exist a negligence cause of action for encouraging a person of legal age to drink by which the encourager could be liable for an accident caused by the intoxication of the person encouraged to drink. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} In the early morning hours of May 21, 1999, Hallam and three of his friends arrived at ELML to attend WDVE's World Tour Show. The WDVE World Tour Show was a live broadcast of WDVE's morning crew that started at 6:00 a.m. and ended at 10:00 a.m. Prior to arriving at ELML, Hallam and his friends stopped at a tavern and purchased a six pack of beer. Hallam and his friends consumed this beer prior to the 6:00 a.m. show.
 {¶ 3} At the show, Hallam bought two rounds of drinks for his friends and two of his friends also bought rounds of drinks. As such, during the show Hallam consumed roughly four beers. These drinks were bought from ELML.
 {¶ 4} Around 7:00 a.m., Hallam became hungry and not being aware that ELML was serving breakfast (for a fee), he left ELML and attempted to drive to a local restaurant to purchase some food. During this attempt, Hallam caused an automobile accident with Barnes. State Trooper Carroll, the officer on the scene of the accident, stated in an affidavit that Hallam appeared to be visibly and noticeably intoxicated.
 {¶ 5} As a result of the injuries, Barnes filed a lawsuit naming Hallam, WDVE and ELML as defendants. After depositions, summary judgment motions were filed by WDVE and ELML. The trial court granted the motions for summary judgment. As to ELML, the court stated that there was no evidence that Hallam was a "visibly or noticeably intoxicated" person when he purchased alcoholic beverages from ELML. Further, it found that there was "no evidence that any alcohol consumption proximately caused the personal injuries allegedly suffered by" Barnes. As to WDVE, the trial court agreed with its (WDVE's) analysis that no case or statute imposes a duty or liability with respect to "negligent encouragement." Furthermore, it found WDVE's argument persuasive that even if there was a duty, the evidence did not establish that WDVE encouraged Hallam to drink. Barnes timely appeals raising two assignments of error.
 STANDARD OF REVIEW {¶ 6} An appellate court reviews a trial court's summary judgment decision under a de novo standard of review, the same standard as used by the trial court. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and when viewing the evidence most favorably to the party against whom the motion for summary judgment is made that conclusion is adverse to that party. Civ.R. 56(C); Temple v. WeanUnited, Inc. (1977), 50 Ohio St.2d 317, 327.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 7} "The trial court erred in granting appellee alsan corporation/east liverpool motor lodge's motion for summary judgment where genuine issues of material fact existed as to the elements of a claim under R.C. 4399.18. (Judgment Entry, 6/25/04 at P. 4)."
 {¶ 8} Barnes' cause of action against ELML is based upon R.C.4399.18. R.C. 4399.18 reads, in pertinent part, as follows:
 {¶ 9} "A person has a cause of action against a liquor permit holder or an employee of a liquor permit holder for injury, death or loss to person or property caused by the negligent actions or omissions of an intoxicated person occurring off the premises of the liquor permit holder or away from a parking lot under the liquor permit holder's control only when both of the following can be shown by a preponderance of the evidence:
 {¶ 10} "(A) The liquor permit holder or an employee of the liquor permit holder knowingly sold an intoxicating beverage to at least one of the following:
 {¶ 11} "(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;
 {¶ 12} "* * *
 {¶ 13} "(B) The person's intoxication proximately caused the injury, death, or loss to person or property."
 {¶ 14} Section (B) of R.C. 4301.22 states:
 {¶ 15} "No permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person."
 {¶ 16} There is no issue as to whether ELML is a liquor permit holder; ELML freely admits this point. Therefore, that element is proven for purposes of summary judgment.
 {¶ 17} The issue disputed by Barnes is whether there exists a genuine issue of material fact as to whether Hallam was noticeably intoxicated when he purchased alcohol from ELML. As stated above, the trial court found that the record was devoid of evidence that Hallam was noticeably intoxicated and, thus, no genuine issue of material fact existed and ELML was entitled to judgment as a matter of law.
 {¶ 18} In the thirteen depositions there is no statement from anyone that Hallam was noticeably or visibly intoxicated when ELML sold him the beer. However, there was testimony that people at the WDVE show were visibly intoxicated. Hallam stated that one of his friends "might" have been intoxicated. (Hallam Depo. 49). He also stated that he believed that other people were intoxicated. (Hallam Depo. 48-49). Scott Paulsen, one of the morning show hosts, stated that people were either visibly intoxicated or sleepy, but he was unsure which one it was. (Paulsen Depo. 42). Gary Maruca, working security at the WDVE show for ELML, stated that earlier in the morning there were two intoxicated, naked men in the pool and that one of these men came to the show and was intoxicated at the show. (Maruca Depo. 17). JoAnn Gilbert, a reporter from the Morning Journal, stated that there were people at the show that were visibly intoxicated, but she could not recall whether those people bought the alcohol from ELML. (Gilbert Depo. 16, 17). Accordingly, Barnes insists that the above evidence supports the conclusion that ELML was selling alcohol to noticeably intoxicated individuals and therefore, by extension, was selling it to Hallam.
 {¶ 19} All of the above testimony, when viewed in the light most favorable to Barnes, establishes that some people at the show were visibly intoxicated. And for the sake of argument, possibly the above evidence could establish that ELML was selling alcohol to noticeably intoxicated people. However, this does not establish or even insinuate that Hallam was one of those individuals.
 {¶ 20} The depositions offer no evidence that Hallam was visibly intoxicated when he purchased alcohol from ELML. Hallam was asked whether he believed that he was intoxicated; he stated "no." (Hallam Depo. 49, 53, 65). However, he did state that he was "impaired." (Hallam Depo. 65). He then explained that he was not "impaired" from alcohol, rather, it was from a lack of sleep. (Hallam Depo. 65). Moreover, Gilbert was asked if she had "any knowledge or personal knowledge, evidence or information of any kind, that he [Hallam] was noticeably intoxicated or visibly intoxicated while he was at East Liverpool Motor Lodge?" (Gilbert Depo. 18). She responded that she did not remember him. (Gilbert Depo. 18). Thus, these statements contradict Barnes' argument that ELML was serving Hallam alcohol when he was visibly intoxicated.
 {¶ 21} The statute is clear that the liquor permit holder (ELML) must sell the intoxicating beverage to the noticeably intoxicated person (Hallam) who proximately caused the injury to Barnes. The fact that ELML was allegedly selling intoxicating beverages to intoxicated persons, not Hallam, does not create a genuine issue of material fact that entitles them to survive the summary judgment motion on this claim. Thus, Barnes' argument that ELML was selling alcohol to visibly intoxicated people is evidence that it was selling alcohol to Hallam when he was visibly intoxicated fails.
 {¶ 22} However, Barnes' argument that summary judgment should not have been granted does not stop there, she also claims other evidence exists that he was noticeably intoxicated when served at ELML. She cites to his admission that he was impaired and the fact that employees of ELML stated that they may not be able to distinguish between a patron impaired by alcohol and one impaired from lack of sleep. She also references his medical records from after the accident, which stated that his blood alcohol content was about 40% above the legal level of intoxication. Another statement she indicates is evidence that ELML served him intoxicating beverages while he was visibly intoxicated is Trooper Carroll's affidavit which she claims states that Hallam was visibly intoxicated shortly after the accident.
 {¶ 23} First, the statement by Hallam that he was impaired is not an admission that he was intoxicated and is not sufficient to survive the summary judgment motion. As aforementioned, Hallam explained that in his opinion he was impaired from a lack of sleep. The statute does not state that a liquor permit holder is liable for accidents caused from serving a person an intoxicating beverage when they are noticeably impaired from sleep. Thus, this argument fails.
 {¶ 24} Second, as to the claim that employees of ELML could not tell the difference between someone who was sleep deprived and intoxicated, this claim is not accurate. Hadley, the beer server for ELML at the WDVE show, stated that he would know the difference between someone who is sleep deprived and someone who is intoxicated. (Hadley Depo. 10-11). He stated that intoxicated individuals slur their speech while tired people do not. (Hadley Depo. 11). Alfred Gloeckner, vice-president of Alsan Corporation, the owner of ELML, first stated that he would not know how to instruct his bartenders on the subject of whether a person is noticeably intoxicated rather than sleep deprived. (Gloeckner Depo. 98). However, further in the deposition he explains that, "It seems to me there is a line there. If somebody's [sic] tired, they are just going to be quiet and not say much. Most people that are intoxicated are very noisy or there is some action that they can show, they are showing." (Gloeckner Depo. 98). Therefore, he does state a distinguishing factor between being sleep deprived and intoxicated that could have been given to his employees to determine between the two. Thus, this argument also fails.
 {¶ 25} Lastly, as to the claim that his medical records show he was above the legal limit and that Trooper Carroll's affidavit that claims that Hallam was visibly intoxicated shortly after the accident, neither of these create a genuine issue of material fact as to whether ELML sold Hallam alcohol while he was visibly intoxicated.
 {¶ 26} The medical records do show that Hallam's blood alcohol content was about 40% above the legal level of intoxication after the accident occurred. This fact establishes that he ingested alcohol prior to the accident. However, it does not create a presumption or an indication that ELML sold him the alcohol while he was visibly intoxicated. Thus, it does not provide sufficient evidence to overcome the summary judgment motion.
 {¶ 27} Likewise, the affidavit of Trooper Carroll only showed that he was intoxicated, not that he was visibly impaired when he purchased the alcohol. The affidavit of Trooper Carroll states:
 {¶ 28} "13. Based upon my interview of the witnesses and investigation at the scene, I determined that it was most probable that the crash was caused by Mr. Hallam's failure to yield the right of way and failure to drive in marked lanes in his attempt to turn onto C.R. 428.
 {¶ 29} "* * *
 {¶ 30} "16. Mr. Hallam, in my judgment as an investigating officer, and based upon my years of experience in investigation of investigating alcohol related traffic offenses, appeared to be visibly and noticeably intoxicated at the time of my interview of him, which occurred on the morning of May 21, 1999, after 8:00 a.m.
 {¶ 31} "17. Mr. Hallam stated to me that he did not consume any alcohol after the crash and before my interview, observations and assessments were conducted."
 {¶ 32} This information, even when viewed in the light most favorable to Barnes, could be used to conclude that Hallam was noticeably intoxicated when the accident occurred and that he did not consume any alcohol after 8:00 a.m. However, it does not establish whether at the time of purchasing alcohol he was visibly or noticeably intoxicated.
 {¶ 33} Thus, when considering all the above, we cannot conclude that the trial court's grant of summary judgment on this issue was improper. That said we must acknowledge that the whole scenario of the morning show, the serving of alcohol and the possible encouragement to drink created a potentially volatile situation. ELML may have been, and probably was, irresponsible for allowing the situation to be created. However, under the law and the statute at issue in this case, this type of behavior does not create liability unless and only if there is some evidence of serving a noticeably intoxicated person. Considering all the above testimony, there is no evidence that Hallam was visibly intoxicated when he purchased alcohol from ELML.
 {¶ 34} Regardless, even if we concluded that summary judgment was inappropriately granted on the above issue, the trial court's judgment would still stand because summary judgment was appropriately granted on the proximate cause issue. The trial court stated that, "there is no evidence that any alcohol consumption proximately caused the personal injuries allegedly suffered by the Plaintiff Alvernia Barnes. The Affidavit of then Trooper Marvin J. Carroll attached to the Plaintiff's Memorandum of May 27, 2004 to the Defendants' Motion stopped short of stating any finding of proximate cause." 06/25/04 J.E.
 {¶ 35} As stated above, R.C. 4399.19(B) requires Hallam's intoxication to be the proximate cause of Barnes' injury. "Ordinarily, proximate cause is a question of fact for the jury. * * * However, `where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant.'" Engle v. Salisbury Twp., 4th Dist. No. 03CA11, 2004-Ohio-2029, ¶ 27.
 {¶ 36} In the instant case, Trooper Carroll's affidavit states that the proximate cause of the accident was Hallam's failure to yield the right of way and failure to drive in marked lanes. The trooper does not conclude that Hallam's intoxication was the proximate cause of the injuries. Furthermore, no other testimony or evidence established that Hallam's intoxication was the proximate cause of the injuries. Thus, without any facts to create a reasonable inference that the alcohol consumption proximately caused the injury, the grant of summary judgment must stand. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 37} "The trial court erred in granting appellee capstar/wdve's motion for summary judgment where genuine issues of material fact existed as to wdve's negligence. (Judgment Entry, 6/5/04 at p. 6)."
 {¶ 38} Barnes' claim under this argument sounds in negligence against WDVE. Essentially, Barnes argues that WDVE was negligent by encouraging people to drink intoxicating beverages to the point of intoxication.
 {¶ 39} "To prevail on a claim for negligence the plaintiff must prove the following elements: (1) the existence of a duty owed by the defendant to the plaintiff, (2) the breach of duty, (3) causation, and (4) damages." Erie Ins. Co. v. Cortright, 11th Dist. No. 2002-A-0101, 2003-Ohio-6690, ¶ 12.
 {¶ 40} The first hurdle Barnes has to overcome to survive on summary judgment is to show that there is an established duty on WDVE to Barnes. The existence of duty is a question of law. Mussivand v. David (1989),45 Ohio St.3d 314, 318. "Duty `* * * is the court's "expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.'"" Homan v.George (1998), 127 Ohio App.3d 472, 475.
 {¶ 41} Barnes insinuates that WDVE owes her a duty to prevent people who they encouraged to drink to the point of intoxication from driving. Or in other words, that reasonably prudent radio professionals would not allow people to drive after the radio professionals had encouraged them to drink to the point of intoxication.
 {¶ 42} It is clear from the deposition testimony that WDVE did not serve the intoxicating beverages or receive any proceeds from the sale of the intoxicating beverages. It is also clear that WDVE does not own ELML. Thus, WDVE's duty could only arise if "negligent encouragement" is a valid cause of action. WDVE contends that it is not.
 {¶ 43} The Ohio Supreme Court has stated that intoxicated persons are primarily responsible for the consequences of their intoxication. Id., referencing Smith v. The 10th Inning, Inc. (1990), 49 Ohio St.3d 289. InSmith, "the court refused to find that a statute that gives a cause of action against a liquor permit holder who sold alcoholic beverages to an intoxicated person to a third person injured by the intoxicated person also gives a cause of action to the intoxicated person. The court's main reason for rejecting this suggestion was the public policy that `an adult who is permitted to drink alcohol must be the one who is primarily responsible for his or her own behavior and resulting voluntary actions. Clearly, permitting the intoxicated patron a cause of action in this context would simply send the wrong message to all our citizens, because such a message would essentially state that a patron who has purchased alcoholic beverages from a permit holder may drink such alcohol with unbridled, unfettered impunity and with full knowledge that the permit holder will be ultimately responsible for any harm caused by the patron's intoxication.' Id. at 291." Homan, 127 Ohio App.3d at 475.
 {¶ 44} The common law rule is that adults are responsible for their own drinking. However, statutes have been enacted to create a few exceptions to this rule. One exception is discussed under the first assignment of error; that a permit holder can be held liable for serving a noticeably intoxicated individual if the intoxication is the proximate cause of another's injury. The statutes do not provide for liability for a person or radio station that encourages a person to drink, i.e. "negligent encouragement."
 {¶ 45} Furthermore, courts have been reluctant to expand upon the commonlaw duty. In Homan (a Tenth Appellate District case), a social host served an alcoholic alcoholic beverages. Appellants sought to expand liability on the premise that an alcoholic's state of intoxication was not voluntary. The Tenth Appellate District refused to expand liability in that situation. It stated: "This rule is consistent with both the common-law principle that there is no duty to affirmatively act to protect another and the policy that persons should be responsible for their drinking." Id.
 {¶ 46} Thus, given all the above, we hold that WDVE owed no duty to Barnes. To suggest otherwise takes responsibility away from the individual and the permit holder that serves the individual and could open the flood gates by creating legal liability on people who encourage consenting adults to drink to the point of intoxication.
 {¶ 47} Yet, even if a duty existed, Barnes failed to show a breach of that duty. There was no testimony that any WDVE employee saw Hallam or thought he was noticeably intoxicated. Thus, for the above reasons, this assignment of error lacks merit.
 {¶ 48} That said, we must once again acknowledge that the whole scenario created and even encouraged a potentially volatile situation. WDVE's behavior of creating and failing to control the situation may have been and probably was irresponsible; but, as explained above, this behavior does not create liability. A duty must have existed to create liability.
 {¶ 49} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs. DeGenaro, J., concurs.