[Cite as *Piras v. Screamin Willie's*, 2015-Ohio-255.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Mark Piras, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 14AP-468 |
| v. | : | (C.P.C. No. 13CV-414) |
| Screamin Willie's et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on January 27, 2015

*Kisling, Nestico & Redick, LLC*, and *Walter W. Messenger*, for appellant.

*Mazanec, Raskin & Ryder Co., L.P.A.*, *Thomas S. Mazanec*, *Jeffery S. Maynard* and *David K. Frank*, for appellees All American Food Service, Inc. dba Screamin Willie's and Screamin Willie's.

*Kahler Law Office, LLC*, and *Tyler W. Kahler*, for Amicus Curiae Buckeye Liquor Permit Holders Association.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, Mark Piras, appeals a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Screamin Willie's and All American Food Service, Inc. d/b/a Screamin Willie's (hereinafter collectively referred to as "Screamin Willie's"). For the following reasons, we affirm that judgment.

{¶ 2}   At approximately 12:45 a.m. on July 16, 2011, John Mirarchi, who was driving his Ford Econoline van the wrong way on I-270, collided with Piras' Ford Taurus. Both Piras and Mirarchi were seriously injured.

{¶ 3}   The evening prior to the crash, Mirarchi and his band, Domino Theory, had played at Screamin Willie's, an entertainment venue and bar.   Mirarchi arrived at Screamin Willie's to set up his band's equipment sometime after 5:00 p.m. on Friday, July 15.   Around 6:00 p.m., he walked to a nearby Burger King restaurant for dinner. Mirarchi then returned to Screamin Willie's, opened a tab at the bar, and ordered a bottle of beer.  The receipt for Mirarchi's bar tab shows that the bartender began the tab at 7:39 p.m.

{¶ 4}   According to Mirarchi, when Domino Theory took the stage, he found a bucket of four bottles of beer provided by another band playing that night.   Mirarchi drank one beer from that bucket as he performed.

{¶ 5}   According to Nick Kahler, Domino Theory's guitarist, the band did not receive a bucket of beer.  Sam Kahler, Nick's brother and Domino Theory's drummer, also did not see a bucket of beer.   Sam, however, did recall the entire band doing a shot of whiskey on stage about halfway through their set.   Nick denied doing a shot on stage. Nick remembered some of the band members drinking a shot during the performance, but he could not identify which members.

{¶ 6}   After Domino Theory finished their performance, Mirarchi and the other band members removed their equipment from the stage.  At this point, Mirarchi's version of events again diverges from the Kahler brothers' version.   According to Mirarchi, he went to the bar and ordered a round of whiskey shots for himself and his fellow band members. Mirarchi claims that the band drank their shots together.  The Kahler brothers testified that, after loading their equipment into their vehicles, they spent the remainder of the night with family.  Sam did not see Mirarchi the rest of the night; Nick only saw Mirarchi in passing.

{¶ 7}   Mirarchi next went outside and found a group of people smoking marijuana from a bong.  Mirarchi took two hits.  While Mirarchi was outside, a Screamin Willie's security guard found him and gave him his wallet.  Sometime after Mirarchi opened a tab

at the bar, his wallet, which he kept in his back pocket, was either lost or stolen. Mirarchi did not know his wallet was missing until the security guard returned it.

{¶ 8}   Upon returning inside, Mirarchi went back to the bar and ordered another bottle of beer. Mirarchi walked to the dance floor and watched the third band on the night's roster perform. After the third band finished, Mirarchi ordered a second round of whiskey shots for his band. According to Mirarchi, he sat with his fellow band members as they all drank the shots.[1]  When the fourth band began playing, Mirarchi ordered another bottle of beer from the bar and drank it as he watched the band perform. Mirarchi liked the fourth band's music, so he went backstage to talk with the band members. Mirarchi had a conversation with the lead singer and his girlfriend. After that conversation, which occurred around 10:00 or 10:30 p.m., Mirarchi cannot remember anything until waking in a hospital bed the next morning.

{¶ 9}   According to Mirarchi, he was coherent throughout the night. He did not have problems standing, walking, speaking, or understanding what was said to him. He carried trays of shots without dropping or spilling the drinks. According to Nick Kahler, he and Mirarchi walked past each other around 9:30 or 10:00 p.m. Nick stated that Mirarchi "was walking fine [and] [l]ooked fine." (Nick Kahler deposition, at 22.)

{¶ 10} The receipt for Mirarchi's tab shows that he closed his tab at 11:54 p.m. The receipt indicates that Mirarchi paid for five bottles of Miller High Life beer[2] and seven Jameson whiskey shots.

{¶ 11} Approximately one hour after Mirarchi closed his tab, Mirarchi's van struck Piras' car. A passing motorist, Jaron Paima, pulled Mirarchi from his burning van. Paima later testified that Mirarchi spoke to him, but did not make any sense. Mirarchi's speech was slurred, and he smelled of alcohol.

{¶ 12} Tim Myers, a sergeant with the Columbus Division of Police, arrived at Grant Hospital at 1:34 a.m. to interview Mirarchi. During the interview, Mirarchi spoke with a thick tongue and slurred his speech. His breath smelled strongly of alcohol. Myers performed a horizontal gaze nystagmus test on Mirarchi and observed six of six clues of

---

[1] Again, this version of events is inconsistent with the Kahler brothers' memories of the evening.

[2] Mirarchi claims that he was drinking Miller Lite that night, not Miller High Life.

impairment. A blood test revealed that Mirarchi's blood alcohol content was .169. Additionally, Mirarchi's urine tested positive for cannabinoids.

{¶ 13} On January 11, 2013, Piras filed suit against Screamin Willie's, alleging that it was liable for his injuries pursuant to R.C. 4399.18. Piras also sued Mirarchi; Nationwide Insurance Company of America, Piras' automobile insurer; and Aetna Health Insurance Company, Piras' health insurer. Nationwide and Aetna both filed cross-claims against Mirarchi and Screamin Willie's.

{¶ 14} After the parties conducted discovery, Screamin Willie's moved for summary judgment. Screamin Willie's argued that summary judgment was appropriate because the record contained no evidence that it knowingly sold alcohol to Mirarchi when he was noticeably intoxicated. The trial court granted that motion. On May 20, 2014, the trial court entered judgment resolving the remaining claims.[3]

{¶ 15} Piras now appeals, and he assigns the following error:

> The Trial Court erred in granting Defendant-Appellee's Motion for Summary Judgment because an issue of fact remains as to whether Defendant-Appellee knowingly sold alcohol to a noticeably intoxicated patron.

{¶ 16} By this assignment of error, Piras argues that the trial court erred in concluding that there was no evidence that Screamin Willie's knowingly sold alcohol to Mirarchi when he was noticeably intoxicated. We disagree.

{¶ 17} A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832,

---

[3] In the May 20, 2014 judgment, the trial court entered judgment in favor of Piras and Aetna, and against Mirarchi. Both Piras' claim against Nationwide and Nationwide's cross-claim were terminated through voluntary dismissal.

¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 18} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the nonmoving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

{¶ 19} Pursuant to R.C. 4399.18:

> A person has a cause of action against a [liquor] permit holder * * * for personal injury, death, or property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:
>
> (A) The permit holder or an employee of the permit holder knowingly sold an intoxicating beverage to * * *:
>
> (1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code.[4]
>
> * * *
>
> (B) The person's intoxication proximately caused the personal injury, death, or property damage.

---

[4] R.C. 4301.22(B) states, "No permit holder and no agent or employee of a permit holder shall sell or furnish beer or intoxicating liquor to an intoxicated person."

The word "knowingly" in R.C. 4399.18(A) describes the object of the sale, i.e., the "noticeably intoxicated person." *Lesnau v. Andate Ents., Inc.*, 93 Ohio St.3d 467, 472 (2001). Moreover, the knowledge required by the statute is *actual* knowledge that the person buying the alcohol is noticeably intoxicated. *Id.*; *Gressman v. McClain*, 40 Ohio St.3d 359, 363 (1988). Constructive knowledge is insufficient. *Id.*

{¶ 20} We believe that the resolution of this case turns on whether Mirarchi was noticeably intoxicated when he was served at Screamin Willie's. If the record lacks any evidence that Mirarchi was or would have been noticeably intoxicated when he was served at Screamin Willie's, then Screamin Willie's is entitled to summary judgment.

{¶ 21} The only evidence regarding Mirarchi's behavior at Screamin Willie's came from Mirarchi himself and Nick Kahler. Neither the owner of Screamin Willie's nor the bartender that worked the night of July 15-16, 2011 could remember Mirarchi, so they could not testify as to whether Mirarchi appeared drunk or not. According to Mirarchi, he had no difficulties standing, walking, or communicating with others while he was at Screamin Willie's. Nick Kahler thought Mirarchi was "fine" when he saw Mirarchi around 9:30 or 10:00 p.m. Although Mirarchi has no memory of anything that occurred after 10:00 or 10:30 p.m., the record contains no evidence that Mirarchi was noticeably intoxicated at Screamin Willie's after that point. Considering the totality of the evidence, we conclude that no genuine issue of material fact remains regarding whether Mirarchi was noticeably intoxicated when he was served. All the evidence produced demonstrates that he was not.

{¶ 22} Piras essentially argues that Mirarchi must have been noticeably intoxicated based on the amount of intoxicants he ingested while he was at Screamin Willie's. The effect of intoxicants differs with each person, and it varies depending on factors such as experience with intoxicants, weight, and food consumed. *Caplinger v. Korrzan Restaurant Mgt., Inc.*, 12th Dist. No. CA2011-06-099, 2011-Ohio-6020, ¶ 21. Mirarchi inhaled marijuana twice and drank between two to seven shots of whiskey and between five to six bottles of beer over the course of approximately four hours. While Mirarchi ingested a significant amount of intoxicants, given the variability in how intoxicants affect individuals, we cannot presume that Mirarchi's intake was sufficient to render him noticeably intoxicated when he was served at Screamin Willie's.

{¶ 23} Second, Piras argues that Mirarchi must have been noticeably intoxicated because he "forgot" his wallet and forgetfulness evinces intoxication. The evidence, however, does not establish how Mirarchi was separated from his wallet. A Screamin Willie's security guard found the wallet in the bar's restroom. As Mirarchi had not been in the restroom, he could not have left the wallet there himself. Moreover, when the security guard found Mirarchi's wallet, the cash in the wallet was missing. Based on these facts, we can envision multiple scenarios: Mirarchi's wallet fell out of his back pocket as he was moving band equipment, someone stole the wallet, or Mirarchi accidentally left the wallet on the bar after starting his tab. Given the ambiguity in the situation, we cannot assume that Mirarchi's loss of his wallet is evidence of noticeable intoxication, as Piras urges us to do.

{¶ 24} Third, Piras argues that Mirarchi must have been noticeably intoxicated when he was served at Screamin Willie's because, after the accident, Mirarchi had a blood alcohol content of .169, slurred his words, smelled of alcohol, and failed the horizontal gaze nystagmus test. We are unpersuaded. For a claim to arise under R.C. 4399.18, noticeable intoxication must be evident at the time of service. *Smith v. S.P. Greenville Inn, L.L.C.*, 11th Dist. No. 2014-G-3184, 2014-Ohio-4311, ¶ 31; *Caplinger* at ¶ 24; *Hlusak v. Sullivan*, 8th Dist. No. 74367 (June 29, 2000). Mirarchi's obvious intoxication at the accident scene and hospital does not prove, absent additional evidence, that he was noticeably intoxicated hours earlier when he placed orders at the bar. *Barnes v. Hallam*, 7th Dist. No. 04 CO 39, 2005-Ohio-2934, ¶ 32. Likewise, the fact that a person's blood alcohol content exceeded the legal limit when tested after the accident does not lead to the conclusion, absent additional evidence, that the person was noticeably intoxicated when he was served at the liquor establishment. *Caplinger* at ¶ 30; *Barnes* at ¶ 26; *Stillwell v. Johnson*, 76 Ohio App.3d 684, 689 (1st Dist.1991).

{¶ 25} Finally, Piras argues that Mirarchi was noticeably intoxicated because he "blacked out," i.e., he could not remember events that occurred after a certain point. Even if we assume that alcohol (rather than the subsequent accident) caused this memory lapse, there is no evidence that Mirarchi exhibited any outward signs of noticeable intoxication after the point of his memory loss. Thus, Mirarchi's memory loss is not evidence that he was noticeably intoxicated when he was served.

{¶ 26} In sum, we conclude that the record lacks any evidence that Mirarchi was or would have been noticeably intoxicated when he was served at Screamin Willie's. The trial court, therefore, did not err in granting Screamin Willie's summary judgment.

{¶ 27} As a final matter, we must address Screamin Willie's motion to strike portions of Piras' reply brief. We deny that motion.

{¶ 28} For the foregoing reasons, we overrule Piras' sole assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Motion denied; judgment affirmed.*

BROWN, J., concurs.
TYACK, J., dissents.

TYACK, J. dissenting.

{¶ 29} I do not believe that summary judgment was appropriate in this case, so I therefore respectfully dissent. Way too much of the suggested facts depend on the claims of John Mirarchi. Mirarchi's claims as to what happened are extremely self-serving. His memory of what happened transitions from self-serving to non-existent for a period of hours before he drove the wrong way in the lanes of an interstate highway and seriously injured an innocent driver.

{¶ 30} To cite a few examples, Mirarchi purchased a round of shots of whiskey which he claims he shared with other members of his band. One of his band members denied getting a shot.

{¶ 31} Mirarchi claimed to have come into possession of four bottles of beer after he purchased a beer for himself. Mirarchi's drinking allegedly started around 7:39 p.m., assuming he had no drinks before he went to Screamin Willies.

{¶ 32} Mirarchi admits smoking marijuana from a bong, although he claims he only took two hits. While Mirarchi was smoking the marijuana, he was approached by an employee of Screamin Willies who was returning his wallet. This demonstrates that Screamin Willies was aware that Mirarchi had purchased several beers and several shots of whiskey which he then followed with smoking marijuana. An employee of Screamin Willies was also aware that Mirarchi had left his wallet somewhere in the bar and was unaware he had left it or lost it.

{¶ 33} Mirarchi apparently closed his bar tab shortly before midnight, but that does not mean he stopped drinking then. He apparently could not remember which kind of Miller beer he was drinking, claiming a lite beer as opposed to a regular beer.

{¶ 34} Shortly after leaving the bar, Mirarchi got into his van and drove onto the freeway heading into oncoming traffic. Another motorist, Jaron Paima pulled Mirarchi from Mirarchi's burning van after the serious collision caused by Mirarchi's intoxication. Paima described Mirarchi as incoherent and smelling of alcohol. For purposes of a summary judgment motion and construing the facts strongly in favor of the innocent driver Mirarchi injured, Mirarchi was in that condition when he stopped drinking at Screamin Willies and left the bar. Again, construing the facts in favor of Mark Piras, the innocent driver Mirarchi injured, Mirarchi was in that condition while still buying drinks at Screamin Willies shortly before he left the bar. If Mirarchi was in that condition when he bought drinks before closing his tab, Screamin Willies had to know it was serving an intoxicated person.

{¶ 35} After the collision, Mirarchi's blood test showed he had the active chemical in marijuana in his system and that he had the equivalent of over eight drinks still in his blood after almost five hours of drinking at the bar.

{¶ 36} I also note that Mirarchi's claim of no memory of events which occurred approximately two hours before he closed his tab might be an indication that he had consumed so much alcohol that he was in an alcohol induced blackout hours before he stopped buying drinks.

{¶ 37} The undisputed facts are that Mirarchi himself bought five bottles of beer and seven shots of whisky at Screamin Willies. We cannot know how many other drinks were bought for him as a performer in a band or how many drinks he consumed before he opened his tab at Screamin Willies.

{¶ 38} We also know Mirarchi had cannabinoids in his system and an employee of Screamin Willies saw him smoking marijuana. We know that shortly after leaving the bar, he was so intoxicated that he drove up an exit ramp and then drove the wrong way on the freeway. After the collision, he smelled strongly of alcohol and was basically incoherent. His blood alcohol was over twice the legal limit in Ohio and apparently was so when he left Screamin Willies.

{¶ 39} The fact Mirarchi did not know his wallet was gone is a further indication he was impaired and the impairment was known to Screamin Willies' staff. I realize that R.C. 4399.18 has been crafted by lobbyists for the liquor industry in a way that minimizes the liability of those bar owners who serve alcoholics well past the legal limit and then wish to avoid liability for the harm done both to the alcoholics themselves and to innocent members of the motoring public. Perhaps our Governor, who lost his own parents to a drunk driver, will wish to have the statute revisited. Even under the words of the present statute, I do not believe that Screamin Willies can avoid liability, at least at the summary judgment stage.

{¶ 40} Stated concisely, I cannot believe that a person who drank what Mirarchi drank, smoked what Mirarchi smoked and was so out of it soon thereafter that he drove the wrong way on the freeway was not noticeably intoxicated while still buying drinks not long before he left the bar.

{¶ 41} I would reverse the trial court's granting of summary judgment and remand the case for a trial. Since the majority of this panel does not do so, I respectfully dissent.

_____