[Cite as *Thompson v. Winn*, 2018-Ohio-5249.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Rick H. Thompson et al., | : | |
| Plaintiffs-Appellants, | : | No. 18AP-81 |
| v. | : | (C.P.C. No. 15CV-010354) |
| Ronald R. Winn et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 27, 2018

**On brief:** *Isaac Wiles Burkholder & Teetor, LLC, Mark Landes, Dale D. Cook,* and *Johnna M. Evans,* for appellants Daniel K. Toops and Estate of Daniel M. Toops; *Law Offices of Mitchell Alter, LLC* and *Mitchell J. Alter*, for appellant Rick H. Thompson. **Argued:** *Dale D. Cook.*

**On brief:** *Kohrman Jackson & Krantz, LLP,* and *Heather R. Zilka,* for appellees. **Argued:** *Heather R. Zilka.*

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiffs-appellants, Rick H. Thompson and Daniel K. Toops, individually and as executor of the estate of Daniel M. Toops, appeal from a judgment of the Franklin County Court of Common Pleas which granted the summary judgment motion of defendants-appellees, Ronald R. Winn and Ronald R. Winn, dba Lee's Sports Bar[1] ("Lee's"). For the following reasons, we reverse the judgment of the trial court.

---

[1] The bar owned and operated by Winn is known under multiple names, including Lee's Sports Bar & Spirits & Patio, Lee's Sports Bar, Lee's Sports 'N' Spirits and Lee's Sports Bar & Tavern.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2}   Appellants filed this action alleging appellees are liable for personal injuries and wrongful death in violation of Ohio's Dram Shop Act.  Winn is the bar owner, manager, and liquor permit holder.  The injuries were the result of a motor vehicle accident in which appellants were passengers in a truck driven by Jacob Bluhm.  The complaint alleges that Bluhm was driving while intoxicated and negligently failed to control his vehicle while speeding, that the vehicle traveled off the roadway, rolled multiple times and ejected all the occupants, thus resulting in serious injuries to Rick H. Thompson and the death of Daniel M. Toops.  (Compl. at ¶ 14.)   Appellants contend that Winn, individually, and Lee's are liable to appellants because Bluhm was served alcohol while he was visibly intoxicated prior to the accident.

{¶ 3}   Appellees submitted Winn's deposition with the motion for summary judgment.  Winn is the owner, manager, and liquor permit holder of Lee's.  Winn testified that Lee's had an unusually high number of patrons on November 27, 2013.  (Winn Dep. at 21.)  Winn observed Bluhm leaving the bar around 11:00 p.m. and Winn did not see any indication that Bluhm was drinking.  (Winn Dep. at 139; 172).  Winn did not observe confusion, lack of coordination, drowsiness or any signs of intoxication.  (Winn Dep. at 172-73.)  He did not believe his bartenders observed any signs of intoxication because they would have stopped serving Bluhm if they had.  (Winn Dep. at 173.)  Winn testified that one of his bartenders, Ashlei Sparks, did stop serving Rick Thompson around 11:00 p.m. because he was intoxicated.  (Winn Dep. at 95-96; 144.)   Winn stated that Sparks and Rick Thompson dated and the group spent most of the evening by the bar where Sparks was working.  (Winn Dep. at 135; 141.)

{¶ 4}   Winn also testified regarding Bluhm's bar tab receipts and stated that Bluhm had three receipts, one at 8:07:29-9:09:08 p.m. for $14; one from 10:04:44-10:05:05 p.m. for $6.50, and finally, one time stamped 12:38 a.m. for $2.50.  Winn testified that the first tab was for food, a bottle of water, a domestic beer and an imported beer.  (Winn Dep. at 165.)  Winn guessed that the second tab was for two beers or a mixed drink.  (Winn Dep. at 166.)  Finally, the third tab was probably a beer.  (Winn Dep. at 166.)  In an affidavit, Winn testified that his bartenders are knowledgeable about the signs of intoxication and he and

the employees would do whatever they could to prevent a noticeably intoxicated person from driving a vehicle.

{¶ 5} Appellees submitted Sparks' affidavit. Sparks testified that she is aware of the signs of intoxication so that she does not knowingly serve alcohol to a visibly intoxicated person. She was working at the bar that evening, but Bluhm was not visibly intoxicated when she interacted with him that evening.

{¶ 6} The deposition of David Thompson was filed. David is the brother of appellant Rick Thompson and both were passengers in Bluhm's truck. David testified that after work he met friends at Lee's on the evening of November 27, 2013, at approximately 10:30 p.m. He consumed 5 beers and 1 shot by midnight. When he arrived at the bar, Bluhm told him that Rick was missing. Bluhm and David looked outside for Rick and Bluhm found Rick passed out in a pile of leaves behind the bar. (D. Thompson Dep. at 44.) They went back inside. David testified he had seen Bluhm intoxicated previously and David thought Bluhm was intoxicated that evening because his eyelids were drooping and he slurred his speech. (D. Thompson Dep. at 40-41.) David thought Bluhm was intoxicated shortly after David arrived at Lee's and then he subsequently saw Bluhm with a beer. (D. Thompson Dep. at 128.) David had no idea how much Bluhm drank that night, but he only saw Bluhm drink one beer. (D. Thompson Dep. at 61-62.) David thought he remembered that Sparks gave Bluhm a hug around 11:00 or 11:30 p.m. that night. (D. Thompson Dep. at 136.)

{¶ 7} David testified he got inside Bluhm's truck because his brother Rick did and he knew Rick was drunk so David wanted to make sure Rick stayed out of trouble. The group left Lee's at approximately 12:30 a.m., planning to go to a bar in the Arena District in downtown Columbus. Bluhm was going to take them to the bar and then go to work at Giant Eagle. Their friend, Josh Mink, was following them in his car with his two cousins.

{¶ 8} Toops sat in the front passenger seat, David sat behind Bluhm, Tiffany Eye was in the center of the back seat and his brother Rick was in the back seat behind Toops. Bluhm started speeding and David tapped him on the shoulder and told him to slow down because he was driving close to 100 mph. (David Dep. at 91.) As the car was leaving Madison County and entering Franklin County, Rick also told Bluhm to slow down. Bluhm told them to "shut up," hit the railroad tracks and then when the truck made contact with

the ground, it slid. David saw the ditch and reached across Tiffany to grab Rick. The vehicle rolled several times. David remembers being ejected but not landing. Toops was pronounced dead at the scene.

{¶ 9} When David awoke, he was on the ground and Josh helped him to the passenger seat in Josh's truck until the paramedics arrived. David fractured seven ribs, punctured his left lung, and fractured his T5 vertebrae. He was in Riverside Methodist Hospital for two days until he signed himself out in order to visit his brother at The Ohio State University Wexner Medical Center. David's blood alcohol level was .116. He testified that the bartender, Sparks, gave him free drinks that night and told him not to worry about his tab. His credit card was charged but not the proper amount because he was not charged for as much as he drank. (D. Thompson Dep. at 120-21.)

{¶ 10} The deposition of Rick Thompson was also filed. Rick testified that the night before, he made plans to meet friends at Lee's on November 27 and Bluhm offered to be the designated driver because he had to work that night. On the 27th, Rick met Bluhm at the Mall at Tuttle Crossing. They bought matching hats and then Rick went home, changed his clothes, ate and then went to Lee's. He arrived at Lee's around 8:00 p.m., and met Bluhm again. Rick, Bluhm and other friends stayed at Lee's until approximately 12:30 a.m. on November 28th. He did not go to any other bars that evening. (R. Thompson Dep. at 53.) He stated that he purchased drinks, Sparks gave him free drinks, and Sam Shriver bought everyone a round of shots. (R. Thompson Dep. at 58; 61.)

{¶ 11} When Bluhm started speeding, Rick became scared and concerned with Bluhm's driving. (R. Thompson Dep. at 93.) Rick yelled, "Slow down" several times. (R. Thompson Dep. at 94.) David also said something to Bluhm about his driving. Bluhm responded, "Shut up, you pussies" and kept driving. (R. Thompson Dep. at 94.) The speedometer registered over 100 mph. (R. Thompson Dep. at 137.) Rick stated that the truck "jumped the railroad tracks. And we went airborne a little bit and came down. And he lost control. And we ended up in a ditch, flipping." (R. Thompson Dep. at 95.) He estimated the truck flipped seven to nine times. He described the accident, as follows:

> Well, when I looked over, Tiffany, my brother and Jacob were
> all gone out of the truck. And then Danny's head was, like,
> bobbing like this. Like when we were doing the flips, you
> could just see him, like, tossing around.

> And I tried to, like -- I was holding on to this handle up here, and tried to, like, grab him, and he was just gone. And then I went to grab back to the handle, and my hand got crushed.
>
> And I let go out of instinct, and I remember being tossed. And I hit the ground, and it was, like, pitch black. And my wind was knocked out of me. And the truck, just like, came on top of me.

(R. Thompson Dep. at 96-97.)

{¶ 12} Josh Mink found Rick but could not lift the truck. The paramedics arrived and removed the truck from on top of Rick's legs. He spent 89 days at The Ohio State University Wexner Medical Center. Rick had a shattered femur, broken left tibia, shattered left hand, a lacerated artery from the femur break, and two broken ankles, two breaks in his pelvis, broken patella, bruised his heart, and lacerated his liver, resulting in 13 surgeries in the initial 89 days and 3 surgeries since then.

{¶ 13} The deposition of David and Rick's mother, Lisa Lively, was filed. Although she was not present at Lee's that evening, she was familiar with the bar and many of its patrons that evening. She watched the security videotape from Lee's that evening and provided a summary of things she watched on the video. Lively testified that Sparks was one of the people that immediately came to the hospital. (Lively Dep. at 59-60.) Lively testified that Sparks told her she was the bartender that evening and that Rick "was so wasted." (Lively Dep. at 65.) Lively stated that Sparks said, "everybody in that vehicle was drunk." (Lively Dep. at 65.) Lively also stated that Sparks told her that Sparks served Bluhm that night. (Lively Dep. at 65.)

{¶ 14} Appellants also submitted the affidavit and report of expert, Dr. Alfred E. Staubus. His report concluded, as follows:

> When Jacob Bluhm was served his last shot at Ashleigh (sic) Sparks' bar at 12:15 a.m. on November 28, 2013, Jacob Bluhm was intoxicated within the Excitement Stage (0.09 to 0.25 g/dL) of Alcoholic Influence. Within this stage of alcohol intoxication, Jacob Bluhm would have been exhibiting noticeable signs of alcoholic influence of at least decreased inhibitions, loss of critical judgment, impairment of memory and comprehension, and some emotional instability which would have been apparent to the bartenders interacting with

him while serving him at least his last drink and most likely his second to last drink.

In summary, it is my opinion to a reasonable degree of scientific probability that (1) the bartenders at Lee's Bar served Jacob Bluhm the equivalent of a total of about 15.25 ounces of 80 proof whiskey[] between approximately 8:08 p.m. on November 27, 2013, and 12:15 a.m. on November 28, 2013, directly resulting in his intoxication and impairment; (2) the bartenders at Lee's Bar knew or should have known that serving the equivalent of about 15.25 ounces of 80 proof whiskey to the 175 pound Jacob Bluhm during an approximately four-hour time period would lead to his intoxication and impairment; (3) companions of Jacob Bluhm believed he was intoxicated when they left Lee's Bar and, at that time, Jacob Bluhm would have had a blood-alcohol concentration within the range of 0.139 g/dL to 0.172 g/dL, a range corresponding to being within the Excitement Stage of Alcoholic Influence; (4) being within the Excitement Stage of Alcoholic Influence, Jacob Bluhm would have been exhibiting signs and symptoms of alcoholic influence including decreased inhibitions, loss of critical judgment, impairment of memory and comprehension, and some emotional instability; (5) these signs of alcohol intoxication would have been noticeable and obvious to the bartenders or manager Ronald Winn during interactions with servicing him, at least, his last two drinks; (6) actual knowledge by the bartenders or manager Ronald Winn that Jacob Bluhm exhibited noticeable signs of intoxication when last served include: (i) Ashlei Sparks['] admission to Lisa Lively the morning of the crash that Jacob Bluhm was drunk; (ii) David Thompson's testimony that Jacob Bluhm was drunk in the bar with "eyes drooping and slurred speech; and (iii) Ronald Winn's testimony that Jacob Bluhm should not have been driving the night of the crash; (7) nobody at Lee's bar offered Jacob Bluhm or his companions a ride home despite Rick Thompson's noticeable and obvious signs of alcoholic impairment (passing out outside of Lee's Bar); (8) Jacob Bluhm's alcohol-impairing effects of reduced attention and control, loss of critical judgment, impairment of comprehension, decreased sensory response, and increased reaction time would have had an adverse affect (sic) on Jacob Bluhm's ability to safely operate his vehicle; and, consequently, (9) Jacob Bluhm's degree of alcohol intoxication would have been a direct, contributory, causative factor in Jacob Bluhm's failure to maintain control of his

> vehicle resulting in him going off the side of the roadway thereby causing the accident.

(Dr. Staubus' Report at 5-6.)

{¶ 15} The trial court excluded Lively's affidavit which attempted to verify the security video and summary regarding her observations because it was not based on personal knowledge. The trial court excluded Lively's testimony regarding Sparks' admissions as hearsay. The trial court also excluded the affidavit and report of Dr. Staubus, finding it speculative.

{¶ 16} Bluhm was found guilty of two counts of aggravated vehicular homicide, six counts of aggravated vehicular assault, and two counts of operating a motor vehicle while under the influence of alcohol or drug of abuse ("OVI"). After merger of the counts, the trial court sentenced Bluhm to one count of aggravated vehicular homicide, three counts of aggravated vehicular assault, and one count of OVI. This court affirmed the conviction but the matter was remanded for resentencing. *See State v. Bluhm*, 10th Dist. No. 15AP-938, 2016-Ohio-7126.

## II. ASSIGNMENTS OF ERROR

{¶ 17} Appellants filed a timely notice of appeal and raised the following assignments of error for our review:

> [I.] The trial court erred in granting summary judgment as there were genuine issues of material fact as to whether the defendant knowingly served an intoxicated person in violation of R.C. § 4399.18.
>
> [II.] The trial court erred in excluding or not fully considering the affidavit of Lisa Lively.
>
> [III.] The trial court erred in excluding or not properly considering the affidavit and report of Dr. Staubus.
>
> [IV.] The trial court erred in excluding or not properly considering the admissions of Ashleigh [sic] Sparks.

## III. ANALYSIS

{¶ 18} In appellants' first assignment of error, they contend that the trial court erred in granting appellees' motion for summary judgment. To prevail on a motion for summary

judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the nonmoving party, no genuine issue of material fact remains to be litigated and that it is entitled to judgment as a matter of law. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 151 (1974). Summary judgment is a procedural device to terminate litigation, so courts should award it cautiously, with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 19} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997). "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997). The party against whom the motion for summary judgment is made is entitled to have the evidence most strongly construed in that party's favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 20} "A party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In accordance with Civ.R. 56(E), when a party files a properly supported motion for summary judgment, the nonmoving party may not rest on the mere allegations or denials contained in the pleadings but must come forward with specific facts demonstrating a genuine issue of fact for trial. If the nonmoving party does not so respond, if appropriate, the trial court shall grant the summary judgment motion.

{¶ 21} Appellants sought damages pursuant to R.C. 4399.18, Ohio's Dram Shop Act, which provides, as follows:

> A person has a cause of action against a permit holder or an
> employee of a permit holder for personal injury, death, or

property damage caused by the negligent actions of an intoxicated person occurring off the premises or away from a parking lot under the permit holder's control only when both of the following can be shown by a preponderance of the evidence:

(A) The permit holder or an employee of the permit holder knowingly sold an intoxicating beverage to at least one of the following:

(1) A noticeably intoxicated person in violation of division (B) of section 4301.22 of the Revised Code;

* * *

(B) The person's intoxication proximately caused the personal injury, death, or property damage.

{¶ 22} In *Piras v. Screamin Willie's*, 10th Dist. No. 14AP-468, 2015-Ohio-255, this court stated: "The word 'knowingly' in R.C. 4399.18(A) describes the object of the sale, i.e., the 'noticeably intoxicated person.' * * * Moreover, the knowledge required by the statute is *actual* knowledge that the person buying the alcohol is noticeably intoxicated. * * * Constructive knowledge is insufficient." *Id.* at ¶ 19, citing *Lesnau v. Andate Ents., Inc.*, 93 Ohio St.3d 467, 472 (2001), and *Gressman v. McClain*, 40 Ohio St.3d 359, 363 (1988). Additionally, noticeable intoxication must be evident at the time an individual is served in order for a claim pursuant to R.C. 4399.18 to arise. *Piras* at ¶ 24, citing *Smith v. S.P. Greenville Inn, L.L.C.*, 11th Dist. No. 2014-G-3184, 2014-Ohio-4311, ¶ 31; *Caplinger v. Korrzan Rest. Mgmt.*, 12th Dist. No. CA2011-06-099, 2011-Ohio-6020, ¶ 24; *Hlusak v. Sullivan*, 8th Dist. No. 74367 (June 29, 2000). R.C. 4301.01(A)(2) broadly defines "sale," as: " '[S]ale' and 'sell' include exchange, barter, gift, offer for sale, sale, distribution and delivery of any kind, and the transfer of title or possession of beer and intoxicating liquor either by constructive or actual delivery of any kind, and the transfer of title or possession of beer and intoxicating liquor either by constructive or actual delivery by any means or devices whatever." The Dram Shop Act applies even if the beer or liquor was not purchased directly by the intoxicated person but was purchased by someone else and given to the intoxicated person. *Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, ¶ 9.

{¶ 23} Actual knowledge can be demonstrated by direct or circumstantial evidence. *Hlusak*; *Sullivan v. Heritage Lounge*, 10th Dist. No. 04AP-1261, 2005-Ohio-4675, ¶ 17. Generally, a plaintiff attempts to establish actual knowledge of intoxication through direct testimony that the patron in question acted intoxicated or expert testimony that the patron would have appeared intoxicated given the amount of alcohol consumed. *Heritage Lounge* at ¶ 17. In *Gressman*, the court stated that knowledge of a person's intoxication "may be obtained from many sources and in many ways, and is furnished or obtained by a variety of facts and circumstances." *Id.* at 363. A person has knowledge of an existing condition "when his relation to it, his association with it, his control over it, or his direction of it are such as to give him actual personal information concerning it." *Id.*

{¶ 24} In this case, David Thompson testified that he observed Bluhm and Bluhm was visibly intoxicated that night because his eyelids were drooping and he slurred his speech. (D. Thompson Dep. at 40-41.) David testified that he thought Bluhm was intoxicated shortly after David arrived at Lee's and then he subsequently saw Bluhm with a beer. (D. Thompson Dep. at 128.) David thought he remembered that Sparks gave Bluhm a hug around 11:00 or 11:30 p.m. that night. (D. Thompson Dep. at 136.)

{¶ 25} Moreover, appellants submitted the expert report of Dr. Staubus, who testified that at the time that Bluhm was served his last two drinks, he would have been exhibiting signs of intoxication. Appellants argue in their third assignment of error that the trial court erred in excluding or not properly considering the affidavit of Dr. Staubus.

{¶ 26} The report by Dr. Staubus was incorporated into an affidavit. The trial court excluded the affidavit finding it was speculative because the report was premised on how drinkers in the general population would be expected to act at different levels of intoxication but the report does not say that Bluhm actually exhibited signs of being noticeably intoxicated when he was at Lee's or that appellees or their agents actually observed signs of intoxication.

{¶ 27} Appellants argue that the opinions set forth by Dr. Staubus are all held to a reasonable degree of scientific probability and based on data regularly relied on by experts in his field.

{¶ 28} In *Lanham v. Fox*, 5th Dist. No. 13CA94, 2014-Ohio-1092, appellants had submitted an affidavit from Dr. Staubus. The court found the affidavit in which Dr. Staubus

stated "these should have been observable signs of alcohol intoxication" and the intoxicated person "would" have been expected to exhibit certain symptoms of intoxication only raised a suggestion of constructive knowledge and not a genuine issue of material fact regarding actual knowledge. The court found the expert language similar to that in another case in which Dr. Staubus submitted an affidavit, *Privett v. QSL-Milford*, 12th Dist. No. CA2013-04-025, 2013-Ohio-4129. In *Privett*, Dr. Staubus submitted an affidavit that the intoxicated person would likely exhibit signs of being within the excitement stage of alcoholic influence and listed the symptoms of the excitement stage. The *Privett* court found the language that the patron "would likely exhibit symptoms" was not evidence of actual knowledge.

{¶ 29} The *Lanham* court distinguished this language from the language used by experts in *Morrison v. Fleck*, 120 Ohio App.3d 307 (9th Dist.1997), and *Hlusak*. The experts in those cases opined that the patron "would certainly exhibit noticeable signs of intoxication which would be apparent to someone in a position to observe him" and "an experienced bartender would know that the patron was intoxicated enough for even a casual observer to have noticed it." The courts found that language sufficient to create a genuine issue of material fact regarding whether an employee knowingly served alcohol to a noticeably intoxicated person. *See Hlusak*; *Morrison* at 317.

{¶ 30} In this case, the report of Dr. Staubus provided that Bluhm "would have been exhibiting noticeable signs of alcoholic influence" and "these signs of alcohol intoxication would have been noticeable and obvious to the bartenders or manager" which is similar to the language used by the experts in *Morrison* and *Hlusak*. This language is sufficient to create a genuine issue of material fact regarding whether an employee knowingly served alcohol to a noticeably intoxicated person. The trial court erred in excluding the expert's affidavit.

{¶ 31} Furthermore, in the fourth assignment of error, appellants contend that the trial court erred in excluding or not properly considering the admissions by Sparks. In her deposition, Lively testified that Sparks told Lively that she was the bartender that evening, she stated that, "everybody in that vehicle was drunk" and that Sparks stated that she served Bluhm that night. (Lively Dep. at 65.) Appellants argue that this evidence is admissible as an exception to the hearsay rule as either a statement against interest under Evid.R.

804(B)(3) or as an excited utterance under Evid.R. 803(2) and as non-hearsay under Evid.R. 801(D)(2)(d) as an admission of a party's agent.

{¶ 32} The trial court found the evidence was not admissible under Evid.R. 801(D)(2)(d) as a non-hearsay admission of a party's agent. The trial court found Lively's testimony unclear regarding whether her conversation with Sparks concerned Sparks' observations of Bluhm while he was present at Lee's, which would have been a matter within the scope of Sparks' agency, or whether Sparks' statements to Lively concerned a general observation about Bluhm's level of intoxication after Sparks became aware of the accident, which would not fall within the scope of Sparks' agency relationship with appellees. The trial court found that appellants did not meet their burden to demonstrate that the statements concerned a matter within the scope of the declarant's agency and excluded the testimony.

{¶ 33} A trial court only considers admissible evidence when ruling on a motion for summary judgment. *Guernsey Bank v. Milano Sports Enters., LLC.*, 177 Ohio App.3d 314, 333, 2008-Ohio-2420, ¶ 59. Evid.R. 801(D)(2)(d) provides: "A statement is not hearsay if * * * [t]he statement is offered against a party and is * * * a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Appellants had the burden to demonstrate that the statements concerned a matter within the scope of the declarant's agency. *Brock v. GE*, 125 Ohio App.3d 403 (1st. Dist.1998).

{¶ 34} Here, the trial court determined that Lively's testimony was unclear regarding the timing of Sparks' observations of Bluhm's intoxication and that the uncertainty affected whether Sparks' statements fell within her agency relationship with Winn. The cases cited as support by the trial court involve whether the declarants were proper agents because the matters involved duties that were outside the scope of those declarants' duties. *See Pennisten v. Noel*, 4th Dist. No. 01CA669, 2002-Ohio-686, citing *Gerry v. Saalfield Square Properties*, 9th Dist. No. 19172 (Feb. 9, 1999); *Brock*. Those cases involved matters that were not within the employees' scope of employment and involved duties those employees did not perform.

{¶ 35} However, in this case, Sparks was required to observe Bluhm's intoxication as part of the scope of her duties as a bartender for appellees. The trial court has a duty to

construe the evidence most strongly in favor of the nonmoving party when considering a summary judgment motion and, in so doing, Lively's statements regarding Sparks' observations of Bluhm's intoxication were made concerning a matter within the scope of her agency. The trial court erred in excluding this testimony.

{¶ 36} Construing the testimony in appellants' favor, the facts provide that David Thompson testified that Bluhm was intoxicated that evening and David noticed that shortly after he arrived at Lee's he subsequently saw Bluhm with a beer. David thought he remembered that Sparks gave Bluhm a hug around 11:00 or 11:30 p.m. that night. Finally, David testified that he thought Sparks served Bluhm. (D. Thomson Dep. at 129.) Rick Thompson testified that Sparks gave them free drinks. Bluhm's final tab that evening was time stamped 12:38 a.m. and Winn testified it was for one beer. Sparks admitted to Lively that Sparks was a bartender that evening, she had served Bluhm, and she stated that, "everybody in that vehicle was drunk."

{¶ 37} All this evidence, along with the affidavit of Dr. Staubus, is sufficient to create a genuine issue of material fact regarding whether a Lee's employee knowingly served alcohol to Bluhm while he was a noticeably intoxicated person. Appellants' assignments of error one, three, and part of four are sustained.

{¶ 38} Given that we are reversing the trial court's decision to grant appellees' summary judgment motion, we need not consider appellants' assignments of error two and the other arguments regarding assignment of error four because they have been rendered moot. " 'Actions become moot when resolution of the issues presented is purely academic and will have no practical effect on the legal relations between the parties.' " *VanMeter v. VanMeter*, 10th Dist. No. 03AP-1107, 2004-Ohio-3390, ¶ 5, quoting *Saffold v. Saffold*, 8th Dist. No. 72937 (May 13, 1999). However, we do not suggest that these issues should not be revisited at the trial stage.

## IV. CONCLUSION

{¶ 39} For the foregoing reasons, we conclude that the trial court erred in granting appellees' motion for summary judgment and accordingly, appellants' first, third and part of the fourth assignments of error are sustained. Our decision renders appellants' second and the rest of the fourth assignments of error moot. Accordingly, the judgment of the

Franklin County Court of Common Pleas is reversed and this cause is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed;*
*cause remanded.*

**TYACK and BRUNNER, JJ., concur.**

_____